KEKER & VAN NEST LLP
JAN NIELSEN LITTLE - # 100029
jlittle@kvn.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff DAVID MCDONALD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID MCDONALD,<br><br>           Plaintiff,<br><br>      v.<br><br>COUNTY OF MARIN, WEST CONTRA COSTA NARCOTICS ENFORCEMENT TEAM,  SCOT BARR, ANTHONY SOUZA, KEITH BARROW, DAVID AUGUSTUS, JAN WYATT LUCHA, DAVID OSAKI, and DOES 6-10,<br><br>           Defendants. | Case No. 14-cv-04154 VC<br><br>**PLAINTIFF DAVID MCDONALD'S THIRD AMENDED COMPLAINT**<br><br>Judge:         The Honorable Vince Chhabria<br><br>Date Filed: September 15, 2014<br><br>Trial Date: Not Yet Set |

Plaintiff David McDonald ("McDonald"), through his attorneys, brings this action against Defendants County of Marin, West Contra Costa Narcotics Enforcement Team ("WestNET"), Scot Barr, Anthony Souza, Keith Barrow, David Augustus, Jan Wyatt Lucha, and David Osaki as follows:

**PRELIMINARY STATEMENT**

1. For 48 years, from 1963 until March 2011, Plaintiff David McDonald owned and operated The Pleasure Principle—a well-known novelty shop and "oddball emporium"[1] of fine jewelry, artwork, adult videos, tobacco accessories, and U.F.O. curios—located at 74 Throckmorton Avenue in Mill Valley, CA. Prior to closing in 2011, The Pleasure Principle was one of the longest-running independent businesses in the county,[2] and the last surviving mainstay of Mill Valley's treasured countercultural history. As downtown Mill Valley rents skyrocketed, Mr. McDonald routinely worked twelve hours per day, seven days per week to remain in business. Despite these long hours, Mr. McDonald enjoyed a simple lifestyle, managing the store he loved, maintaining an excellent reputation in the community, and enjoying the company of his many close friends.

2. In February 2011, Defendants WestNET, Barr, and Souza purportedly received a suspicious tip from a confidential informant, claiming that Mr. McDonald was selling ephedrine, a "precursor" to methamphetamine. They conducted a brief investigation, described by Mr. McDonald's trial judge as "sloppy," during which Defendant Souza (acting as an undercover agent) visited The Pleasure Principle and purchased "powder extender"—a completely legal product. WestNET deliberately subjected this powder extender to a "Narcotics Information Kit"—a field narcotics test known to generate up to 70% false positive results (including the result on the "powder extender" purchased from Mr. McDonald, which falsely indicated positive for ephedrine and methamphetamine).

---

[1] Scott James, *Jail Time Yields a Clash on Vegetarian Meals*, N.Y. TIMES, Aug. 4, 2011, at A19A, available at http://www.nytimes.com/2011/08/05/us/05bcjames.html?_r=0 (last visited Dec. 5, 2014).

[2] Peter Fimrite, *Not Run-of-the-Mill Valley*, S.F. CHRONICLE, Aug. 12, 1997, available at http://www.sfgate.com/news/article/Not-Run-of-the-Mill-Valley-Store-s-rebel-2830756.php (last visited Dec. 5, 2014).

3. On March 23, 2011, Mr. McDonald's life as he knew it was completely torn apart. Defendants WestNET (including roughly a dozen of its officers), Barr, Souza, and Barrow stormed The Pleasure Principle, executed an unlawful warrantless arrest on Mr. McDonald, and took him into custody. They ransacked and raided his store and, upon information and belief, either stole or caused to be stolen $5,500 in cash, as well as jewelry and other items worth many thousands more.

4. In the days, weeks, and months that followed, Mr. McDonald's life turned into a living nightmare. After taking Mr. McDonald into custody, Defendants WestNET, Barr, Souza, and Barrow deliberately left the front door of The Pleasure Principle wide open, the light switch turned on, and Mr. McDonald's jewelry and other valuable merchandise openly displayed in the window. Over the next several days, The Pleasure Principle—into which Mr. McDonald had poured 48 years of blood, sweat, and tears—was pillaged, items with significant cash and sentimental value were stolen and destroyed, and Mr. McDonald suffered property damage and theft in an amount totaling at least $39,000.

5. Unable to afford bail (because Defendants WestNET, Barr, Souza, and Barrow had seized nearly all money in Mr. McDonald's possession as part of their raid), Mr. McDonald remained in custody for 99 days, during which he suffered grievously. Mr. McDonald has strictly abstained from eating any beef, pork, or poultry for over 40 years, based on his spiritual belief in the even value of the lives of humans and land-based animals. But his jailers, Defendants County of Marin, David Augustus, Jan Wyatt Lucha (the jail's Food Service Director), and Deputy David Osaki, refused to acknowledge his closely held spiritual opposition to eating meat, instead deriding his beliefs as a mere "lifestyle" choice. They denied him a vegetarian diet, essentially starving him. Mr. McDonald filed multiple grievances, pleading for vegetarian meals and citing his dramatic weight loss, but to no avail. Marin County prison officials rejected these requests, pursuant to an unlawful, discriminatory policy of denying vegetarian meals to prisoners whose spiritual beliefs did not align with mainstream religious practice. Eventually, Marin County officials threatened that Mr. McDonald would be placed in solitary confinement unless he ceased

requesting a vegetarian diet. In the 99 days before he was released, Mr. McDonald's weight plummeted from 200 pounds to 152 pounds. Mr. McDonald was 70 years old at the time.

6. Meanwhile, Mr. McDonald was unable to pay rent on The Pleasure Principle because WestNET, Barr, Souza, and Barrow had seized all his assets during their raid. Mr. McDonald was evicted at the end of March 2011, and The Pleasure Principle ceased to exist. Now, 74 Throckmorton Avenue is occupied by an upscale hair salon, ironically named "Liberty."

7. The "powder extender" eventually faced a reliable drug test, which confirmed—as Mr. McDonald had insisted all along—that it was a completely legal product. Defendant County of Marin was forced to drop all of the drug charges on which Mr. McDonald was arrested. Undeterred, defendants then changed their theory and pursued Mr. McDonald for *pretending* to sell methamphetamine. Mr. McDonald was convicted, sentenced to time served, and placed on probation, but not before enduring grievous injury to his reputation, his finances, his life's work, and his health.

8. Mr. McDonald brings the present lawsuit to recover damages based on his arrest and imprisonment; the search of The Pleasure Principle and the seizure, destruction, and theft of his property; injuries caused by Defendants WestNET, Barr, Souza, and Barrow' leaving The Pleasure Principle's front door wide open after Mr. McDonald's arrest; and Defendants County of Marin, David Augustus, Jan Wyatt Lucha, and David Osaki's violation of his statutory and constitutional rights by denying him a vegetarian diet.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Mr. McDonald's constitutional and statutory claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

10. This Court has supplemental jurisdiction over Mr. McDonald's state law claims pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as his constitutional and statutory claims.

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391 because all relevant conduct occurred in this judicial district.

# THE PARTIES

12. Plaintiff David McDonald is a natural person, a resident of Fairfax, Marin County, California, and a citizen of the United States of America.

13. Defendant County of Marin is a political subdivision of the State of California, and encompasses the Marin County Sheriff Department, the Marin County Major Crimes Task Force, the Marin County District Attorney, and the Marin County Jail.

14. Defendant WestNET is a public law enforcement agency that conducts drug enforcement activities such as drug raids in Northern California (including in Marin County). Upon information and belief, WestNET is comprised of law enforcement agencies from participating political subdivisions, including the County of Contra Costa and the City of El Cerrito.

15. Defendant Scot Barr is a law enforcement agent working for WestNET in 2011. Upon information and belief, Defendant Barr was the lead agent responsible for the 2011 investigation of Mr. McDonald.

16. Defendant Anthony Souza is a law enforcement agent working for WestNET in 2011. Anthony Souza worked as an undercover agent during the 2011 investigation of Mr. McDonald.

17. Defendant Keith Barrow is a law enforcement agent working for WestNET in 2011, who participated in the March 23, 2011 search of The Pleasure Principle.

18. David Augustus is a captain in the Marin County Sheriff's Office.

19. Upon information and belief, Defendant Jan Wyatt Lucha is an officer of the Marin County Sheriff's Department, and is the Food Service Director for the Marin County Jail.

20. Upon information and belief, David Osaki is a deputy in the Marin County Sheriff's Office, bearing badge number 2342.

21. All claims against the individual defendants are made against those defendants both in their individual and official capacities.

# FACTUAL ALLEGATIONS

## I. FINANCIAL DIFFICULTY WITH THE PLEASURE PRINCIPLE

22. In the final few years before Mr. McDonald lost The Pleasure Principle, Mr. McDonald was operating the store at a loss. Because of The Pleasure Principle's financial condition, Mr. McDonald occasionally was late on his rent payments.

23. Also during this period, Mr. McDonald had an ongoing dispute with his landlord, who wanted to evict Mr. McDonald. News reports suggested that The Pleasure Principle did not fit in with the other trendy, upscale shops Mill Valley, and that numerous other, more mainstream businesses were "eager to swoop in"—and that rents would ascend "toward the stratosphere" if Mr. McDonald were gone.

24. On March 1, 2011, Mr. McDonald received an eviction notice, stating that if Mr. McDonald did not pay all rents due by the end of March 2011, he would be evicted. On March 23, 2011, Defendants WestNET, Barr, and Souza guaranteed that result.

## II. THE PLEASURE PRINCIPLE'S SALE OF POWDER EXTENDER

25. In 1984, a pharmacist from the East Coast visited Mr. McDonald's shop offering to sell "powder extender" he had created with a proprietary formula. Although this product could be used by some purchasers to "cut" or extend the weight of narcotics, it had other lawful uses and by itself was perfectly legal to possess and sell. In the 1980's, such powders were readily available, including at national chain stores like Tower Records and other retailers. Mr. McDonald purchased several bags of powder from the pharmacist and kept them at The Pleasure Principle.

26. From time to time customers would purchase small quantities of this powder, although The Pleasure Principle was no competition for other retailers (such as Tower Records) whose volume was much greater than Mr. McDonald's. Eventually the demand for this powder dried up and the bags were shelved away in the shop, away from the eyes of consumers.

## III. OVERVIEW OF THE INVESTIGATION INTO MR. MCDONALD'S SALE OF POWDER EXTENDER

27. In February 2011, Defendants WestNET, Barr, and Souza commenced an investigation of Mr. McDonald, on purported suspicions that Mr. McDonald was selling

ephedrine. WestNET agents testifying at Mr. McDonald's trial claimed they were alerted to Mr. McDonald by a confidential informant, who provided information in consideration for leniency in pending felony cases in Contra Costa and Alameda counties. Upon information and belief, this informant was of such disreputable character that the prosecution declined to call him at Mr. McDonald's criminal trial.

28. Upon information and belief, Defendants WestNET, Barr, and Souza initiated the investigation based on a policy of pursuing tips from informants that are knowingly unreliable.

29. Defendant Anthony Souza, working as an undercover agent on an investigation directed by Defendant Barr, made four visits to The Pleasure Principle between February 28, 2011, and March 23, 2011. On each occasion, Souza wore a wire to record his conversations with Mr. McDonald. However, the recordings taped by Souza's wire somehow never captured key statements that Souza and Barr repeatedly attributed to Mr. McDonald in Souza's investigation reports, in Barr's application for a search warrant of the Pleasure Principle, at Mr. McDonald's arraignment, and during Mr. McDonald's trial.

30. On February 28, 2011, Souza made his first visit to The Pleasure Principle, and asked if he could sample and purchase some of the powder extender. After locating and dusting off the bags, Mr. McDonald sold Souza two ounces of powder extender for $300.

31. WestNET field-tested the powder extender Souza purchased using a "Narcotics Information Kit" or "NIK" field test. On information and belief, this test kit typically generates a false positive rate of up to 70 percent, and will indicate positive for many perfectly legal substances (such as chocolate bars), which makes the test particularly useful for aggressive law enforcement. Not surprisingly, the powder extender purchased by Defendant Souza on February 28, 2011 tested positive for ephedrine on the NIK test.

32. On information and belief, Defendants WestNET, Barr, and Souza used the NIK test pursuant to a policy and/or custom and practice, due to its high incidence of positive results.

33. At some time after Souza's February 28 visit, Mr. McDonald received an anonymous phone call from someone asking if the powder extender sold by Mr. McDonald could be made into "anything." Mr. McDonald told him "definitely, absolutely not," and, if that was

1  what he was looking for, he needed another product from another supplier.  Mr. McDonald told
2  this person that the power extender was a bland, neutral product to attain weight enhancement
3  only.  On information and belief, the person on the other end of that call was the confidential
4  informant working with Defendants Barr and Souza.

5       34.     On March 7, 2011, Souza returned to The Pleasure Principle and asked to purchase
6  more powder extender.  Mr. McDonald sold him one pound of the powder extender for $1,350,
7  and provided him with a smaller sample of a different type of extender.

8       35.     WestNET once again used its NIK test on Defendant Souza's March 7, 2011
9  purchases.  The test yielded a false positive result for ephedrine on the pound of powder extender,
10 and a false positive result for methamphetamine on the smaller sample (despite the fact that Mr.
11 McDonald was only under investigation at that time for selling ephedrine).

12      36.     Eventually, at Mr. McDonald's criminal trial, Defendant Barr testified that he does
13 not "have a lot of faith" in the NIK test, because it yields "a lot of false positive results."  He also
14 noted that, "[i]n this case, the results were slightly unusual."  But during WestNET's month-long
15 investigation of Mr. McDonald, neither Barr nor any other WestNET agents investigating Mr.
16 McDonald ever sought a confirmatory test for the powder extender purchased by Souza.

17      37.     Defendant Souza returned to The Pleasure Principle a third time on March 21,
18 2011.  Souza said he liked the powder. Souza and Mr. McDonald discussed Mr. McDonald's
19 financial difficulties and his dispute with his landlord, and Defendant Souza told Mr. McDonald
20 that he was there to help by bringing "a little business" Mr. McDonald's way.  Mr. McDonald
21 told him that the powder extender was 20-25 years old and that the quantity was limited.
22 Regardless, Souza stated that he wanted to purchase a larger quantity and asked the price, to
23 which Mr. McDonald replied $1,500 per pound.  The powder in one of the bags had a shinier and
24 brighter color and different texture, and Souza and Mr. McDonald referred to that powder as "the
25 special one."  Mr. McDonald told him the price was $1,600 per pound for the "special one."
26 Souza stated that he wanted to buy eight pounds of the regular powder extender, and one pound
27 of "the special one."  Souza left saying he would return the next day.
28

38.     Mr. McDonald could hardly believe his apparent good fortune. Mere days before he was set to face eviction for failure to make rent payments, Defendant Souza had materialized out of nowhere and offered to pay more than ten thousand dollars for Mr. McDonald's entire stock of a product that had been collecting dust on his shelves since the 1980's.

39.     In his investigation report for the March 21, 2011 meeting, Souza claimed that Mr. McDonald told him that the price for "the special one" was $16,000 per pound, not $1,600, and that the high price indicated that "the special one" was methamphetamine. This statement was deliberately false. Souza claimed in his investigation report that Mr. McDonald recorded these prices on a slip of paper, and Defendant Barr reported on his separate investigation report for March 21, 2011, that Souza handed him the slips of paper on which Mr. McDonald had made "notations." The slips of paper—appended to Barr's investigation report—say nothing about prices. Additionally, the wire recording for the March 21, 2011 meeting does not record Mr. McDonald's alleged statement that the price of "the special one" was $16,000. Both Souza and Barr were asked at Mr. McDonald's criminal trial whether either of them ever located the paper that purportedly corroborated Souza's tale. They both stated that he had never found it—and, in fact, that they never even bothered to look for this critical piece of evidence.

40.     Similarly, in the same March 21, 2011 investigation report, Souza claimed that Mr. McDonald "tallied" the price for eight pounds of regular powder extender at $1,500 per pound, and one pound of "the special one" at $16,000 per pound, for a total amount of $28,000. This statement is also a deliberate lie; Souza was never able to back his statement up, because Mr. McDonald's "tally" appeared on neither the slips of paper handed to him by Mr. McDonald at the meeting, any other evidence located during the search of The Pleasure Principle, nor the wire recording made by Souza.

41.     On March 23, 2011, Souza returned to purchase the powder extender he discussed with Mr. McDonald on March 21. After Mr. McDonald pulled an old cardboard box out from behind the store counter and showed Mr. Souza the bags of powder extender inside, Souza excused himself to retrieve money from his car.

42. After Souza left the store, numerous law enforcement vehicles pulled up on both sides of Throckmorton Avenue, virtually blocking the street. Suddenly, law enforcement agents stormed The Pleasure Principle, arrested Mr. McDonald, and took him into custody at the Mill Valley police station.

43. At all times during his four meetings with Mr. McDonald, Souza never indicated that he wanted to buy anything illegal. Souza spoke exclusively in innuendo and euphemisms, implying to Mr. McDonald only that he sought to purchase legal "powder extender." Mr. McDonald never sold anything illegal to Mr. Souza (or to anyone else), and never suggested that he was doing otherwise.

## IV. DEFENDANTS WESTNET, BARR, AND SOUZA RAID THE PLEASURE PRINCIPLE

44. After taking Mr. McDonald into custody, Defendants WestNET, Barr, Souza, and Barrow executed a search warrant on the Pleasure Principle. The application for the search warrant was supported by the unreliable statements of a confidential informant, the unreliable results of the NIK test, and Defendant Souza's misrepresentations regarding the content of his conversations with Mr. McDonald.

45. During Mr. McDonald's criminal trial, Defendant Barr testified that, during this search, Defendant Barrow was "rooting around" The Pleasure Principle and seized "wad[s] of cash." Ultimately, agents seized $29,215 in documented cash. However, this sum is only a minor portion of the financial loss Mr. McDonald incurred as a result of this unlawful search.

46. In addition to the money seized and recorded, an additional $5,500 went missing. This cash was located in the same folders as the $29,215 that was recorded into evidence. On information and belief, Defendants Barr, Souza, and Barrow unlawfully stole this money or caused it to be stolen.

47. After the WestNET agents concluded their search, they left the store's light switch on and the front door facing Throckmorton Avenue wide open, with many valuable items remaining visible through the store's front window—as confirmed by multiple eye witnesses who observed The Pleasure Principle in the days following the raid. Upon information and belief, the

front door remained wide open and the lights remained on for three days, until someone contacted the Mill Valley Police Department, and the police secured the store.

48. On information and belief, Defendant Barr—after ransacking The Pleasure Principle—deliberately caused the door to be left open and the light to be left on in an effort to invite looters, and thereby to cover his and his agents' tracks. On information and belief, Defendant Barr was directly responsible for leaving the premises unsecured: His March 23, 2011 investigation report deliberately misrepresented that, after the search concluded, "the business was secured and all involved personnel left the area."

49. As a direct result of Defendants WestNET, Barr, Souza, and Barrow's actions, Mr. McDonald incurred at least $39,000 in losses, including: damage to his store; destruction of valuable items such expensive porcelain and crystal; and theft of cash, valuable stones, other assorted jewelry; and loss of a lifetime's collection of rare items rich in sentimental value.

## V.  MR. MCDONALD'S STARVATION IN MARIN COUNTY JAIL

50. After he was taken into custody, Mr. McDonald's plight went from bad, to worse, to downright tortuous. Shortly after he was arrested and charged, Mr. McDonald was transferred to Marin County Jail. Unable to post a $50,000 bail (due, largely, to the unlawful seizure of all of his cash assets), Mr. McDonald remained incarcerated for 99 days, until a group of his many close friends in Mill Valley collected sufficient funds secure his release.

51. While incarcerated, Mr. McDonald's jailer, Defendant County of Marin, refused to provide him with a vegetarian diet, leaving Mr. McDonald to subsist off nothing but liquids and occasional, meager side portions of vegetables and fruits that had not contacted any meat.

52. Mr. McDonald has been a strict pesco-vegetarian since 1969. He eats absolutely no beef, pork, venison, or poultry meat or processed meat, including products containing meat or contaminated by meat, such as many soups, stews, and gravy, all of which he considers animal "corpses." Mr. McDonald believes that eating the flesh of land-based animals is no different than eating human flesh. This dietary observance is part of a religious and spiritual worldview, which Mr. McDonald calls "Evenism" because it recognizes the even value of land-based animals and humans. By denying Mr. McDonald a vegetarian diet, Defendant County of Marin starved him.

53.     During his incarceration, Mr. McDonald routinely filed prison grievance forms and appeals, complaining to jail officials that he was suffering dizzy spells, pain, and dramatic weight loss.  Mr. McDonald struggled to explain that his belief in Evenism is as strong as any mainstream religious observance.  But jail officials, including Defendants Augustus, Wyatt Lucha, and Osaki, consistently rejected his requests for a vegetarian diet, on the unlawful basis that his spiritual beliefs did not fall within accepted religious categorization, and therefore his pesco-vegetarian diet was a mere "lifestyle" choice, unworthy of recognition.

54.     For example, on May 12, 2011—nearly two months into Mr. McDonald's incarceration—he filed an inmate grievance form in which he noted:  "I have filled out 2 (or more) inmate request forms [and] two inmate request for treatment forms to request a vegetarian diet.  Each time [I was] told that I have to be religious to obtain that.  I have been interviewed by a nurse who noted my weight, a doctor—who was going 'to talk' to whoever is in charge of my diet, and a 'Jan' who pretty much said also that I have to be religious.  I express[ed] that my belief in not hurting animals is just as important as any religious belief, but they could not help." In a May 13, 2011 response to this grievance, Defendant Osaki stated: "Food Service Manager Jan Wyatt-Lucha, RD, had already addressed Mr. McDonald's request, unless directed by our medical department, Mr. McDonald will not receive a 'lifestyle' diet." (Emphasis in original.)

55.     Upon information and belief, Defendants Augustus and Wyatt Lucha are Defendant County of Marin's final policymaking authorities regarding whether a Marin County Jail inmate's moral or ethical objection to eating meat qualifies as a "lifestyle" choice that will be disregarded by Defendant County of Marin.

56.     Mr. McDonald filed yet another grievance form on May 28, 2011, stating that he was being starved—that he was losing weight dramatically, that he was much weaker than he had ever been, and that he was having dizzy spells.  Mr. McDonald never received a response to this form, and inquired into it for a week and a half, until he finally approached a deputy, who told him to "forget it" and threatened that, if he kept asking about a vegetarian meal, he would be placed in solitary confinement.

11
PLAINTIFF DAVID MCDONALD'S THIRD AMENDED COMPLAINT
Case No. 14-cv-04154 VC

884727

57.     Mr. McDonald is 5 feet, 10 inches tall. When he was taken into custody on March 23, 2011, he was 70 years old, weighed 200 pounds, and was in excellent health—especially considering his age. When he was released on June 30, 2011, he weighed 152 pounds. Mr. McDonald's friends were astounded by how gaunt and malnourished he appeared after just three months ("like a prisoner of war"), and how quiet and distraught his temperament had become.

58.     Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki were well aware of Mr. McDonald's horrific weight loss during his incarceration, as a result of his obvious, observable decline.

59.     Losing 48 pounds in three months at his advanced age caused Mr. McDonald incredible pain and hardship, including constant and extreme hunger, headaches, stomach pain, extreme weakness, physical palpitations, and dizziness. In May 2011—two months into Mr. McDonald's incarceration—a major filling fell out of one of his teeth. The next month, Mr. McDonald lost another major filling.

60.     Upon information and belief, Marin County Jail provides vegetarian meals to other inmates, and could have easily provided vegetarian meals to Mr. McDonald. Other county jails in the Bay Area offer vegetarian meals to inmates upon request, and do not discriminate among inmates whose spiritual beliefs require observance of a vegetarian diet.

## VI.     LONG-TERM HARM CAUSED BY DEFENDANTS

61.     In addition to the financial losses caused by Defendants WestNET, Barr, Souza, and Barrow, and the unimaginable pain endured while Defendant County of Marin starved him for over three months, Mr. McDonald continues to suffer from the Defendants' unlawful conduct.

62.     In his first month out of Marin County Jail, Mr. McDonald was in an extremely weakened state. During this period, he was forced to clear out the remaining inventory from The Pleasure Principle. However, as a result of the store having been left open for three days, it was completely ransacked, resulting in broken shelves, with boxes and store items fallen and precariously piled up. While trying to clean up this mess in his weakened state, Mr. McDonald suffered a hernia. The hernia continues to cause Mr. McDonald frequent pain and prevents him

from exercising.  In September 2011, a third filling fell out of one of Mr. McDonald's teeth, and the tooth broke partially away.

63.  Mr. McDonald also continues to suffer a heavy emotional toll from his ordeal, including stress, trauma, angst, worry, shock, tremors, disbelief, and despair.

## FIRST CAUSE OF ACTION

**False Arrest / False Imprisonment – Fourth and Fourteenth Amendment, 42 U.S.C. § 1983**

**(Against Defendants WestNET, Barr, and Souza)**

64.  Mr. McDonald incorporates by reference all preceding paragraphs.

65.  Despite their awareness of the extreme unreliability of the NIK field test and the confidential informant providing them information, Defendants WestNET, Barr, and Souza never once sought confirmation from an actual laboratory analysis before arresting Mr. McDonald without a warrant—despite having nearly a month between purchasing "powder extender" and arresting him.

66.  Defendants WestNET, Barr, and Souza arrested Mr. McDonald without a warrant on charges of possessing methamphetamine, selling methamphetamine, possession of ephedrine with intent to manufacture methamphetamine, and maintaining a place for selling methamphetamine.  Ultimately, the state dropped *all* of these charges against Mr. McDonald, and was able to convict him only for *pretending* to sell methamphetamine.

67.  Mr. McDonald's warrantless arrest on bogus methamphetamine charges lacked probable cause.

68.  Defendants WestNET, Barr, and Souza acted with intent to confine Mr. McDonald, actually confined him, and caused him harm, including damaging his reputation, denying his liberty, proximately causing his starvation, and causing him to fail to miss his rent payment at the end of March 2011 and thereby lose his store.

69.  These actions constitute an unlawful seizure in violation of the Fourth Amendment, and a denial of Mr. McDonald's substantive due process rights under the Fourteenth Amendment.

70. Defendants WestNET, Barr, Souza, and Barrow acted with intentional and malicious disregard of Mr. McDonald's rights.

71. Accordingly, Mr. McDonald seeks damages pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial, in addition to punitive damages against Defendants Barr and Souza, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

**Unreasonable Search and Seizure – Fourth Amendment, 42 U.S.C. § 1983**

**(Against Defendants WestNET, Barr, Souza, and Barrow)**

72. Mr. McDonald incorporates by reference all preceding paragraphs.

73. During their search of The Pleasure Principle on March 23, 2011, Defendants WestNET, Barr, Souza, and Barrow stole or caused to be stolen at least $5,500. Defendants WestNET, Barr, Souza, and Barrow then deliberately left the front door to the Pleasure Principle wide open following their March 23, 2011 search, with the light switch turned on, and valuable items on display in the front window, inciting looters and thieves to burglarize Mr. McDonald's store of 48 years, causing cumulative losses in an amount of at least $39,000.

74. Defendants WestNET, Barr, Souza, and Barrow acted with intentional and malicious disregard of Mr. McDonald's rights.

75. These actions constitute an unreasonable seizure in violation of the Fourth Amendment.

76. Defendants WestNET, Barr, Souza, and Barrow acted with intentional and malicious disregard of Mr. McDonald's rights.

77. Accordingly, Mr. McDonald seeks damages pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial, in addition to punitive damages against Defendants Barr, Souza, and Barrow, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION

**Violation of RLUIPA – 42 U.S.C. § 2000cc, *et seq*.; 42 U.S.C. § 1983**

**(Against Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki)**

78. Mr. McDonald incorporates by reference all preceding paragraphs.

79. Mr. McDonald's spiritual belief in the even sanctity of all human and land-based animal life, which he calls Evenism, is a closely-held moral and ethical belief that constitutes a religion within the meaning of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA").

80. Mr. McDonald has observed this spiritual belief since 1969 by strictly following a pesco-vegetarian diet and abstaining from eating *any* beef, pork, or poultry.

81. On information and belief, Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki routinely provide vegetarian meals to other inmates, and providing Mr. McDonald with a vegetarian diet would have caused little or no hardship to any of these Defendants.

82. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki denied Mr. McDonald a vegetarian diet during his incarceration in Marin County Jail, despite his observable, dramatic weight loss and decline in health, his advanced age, and his frequent, formal complaints noting his need for a vegetarian diet based on religious observance.

83. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki denied Mr. McDonald a vegetarian diet based on an unlawful policy of treating non-mainstream moral and ethical beliefs as mere "lifestyle" choices unworthy of observance.

84. As a result of this policy, Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki substantially burdened Mr. McDonald's religious exercise without any compelling need for imposing such burden.

85. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki's actions caused Mr. McDonald harm in the form of grievous pain and personal injury by essentially starving him for 99 days, during which Mr. McDonald suffered constant and extreme hunger, headaches, stomach pain, weakness, and dizziness, and after which Mr. McDonald suffered a hernia and ongoing damage to his teeth, even as he tried to regain his strength.

86. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki acted with intentional and malicious disregard of Mr. McDonald's rights.

87. Accordingly, Mr. McDonald seeks compensatory damages pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial, in addition to punitive damages against Defendants Augustus, Wyatt Lucha, and Osaki, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

**Religious Discrimination – Fourteenth Amendment; 42 U.S.C. § 1983**

**(Against Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki)**

88. Mr. McDonald incorporates by reference all preceding paragraphs.

89. Mr. McDonald's spiritual belief in the even sanctity of all animal and human life, which he calls Evenism, is a closely-held moral and ethical belief that constitutes a religion subject to protection under the First and Fourteenth Amendments of the United States Constitution.

90. Mr. McDonald has observed this spiritual belief since 1969 by strictly following a pesco-vegetarian diet and abstaining from eating *any* beef, pork, or poultry.

91. On information and belief, Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki routinely provide vegetarian meals to other inmates based on religious observance, and providing Mr. McDonald with a vegetarian diet would have caused little or no hardship to any of these Defendants.

92. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki denied Mr. McDonald a vegetarian diet during his incarceration in Marin County Jail, despite his observable, dramatic weight loss, his advanced age, and his frequent, formal complaints noting his need for a vegetarian diet based on religious observance.

93. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki denied Mr. McDonald a vegetarian diet based on an unlawful policy of treating non-mainstream moral and ethical beliefs as mere "lifestyle" choices unworthy of observance.

94. By denying Mr. McDonald a vegetarian diet during his incarceration in Marin County Jail, on the basis that Mr. McDonald's spiritual abstinence from beef, pork, and poultry meat did not fall within a recognized religious practice and therefore constituted a "lifestyle" diet,

Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki discriminated against Mr. McDonald's religious exercise without any compelling government need.

95. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki's actions caused Mr. McDonald harm in the form of grievous pain and personal injury by essentially starving him for 99 days, during which Mr. McDonald suffered constant and extreme hunger, headaches, stomach pain, weakness, and dizziness, and after which Mr. McDonald suffered a hernia and ongoing damage to his teeth, even as he tried to regain his strength.

96. Defendants County of Marin, Augustus, Wyatt Lucha, and Osaki acted with intentional and malicious disregard of Mr. McDonald's rights.

97. Accordingly, Mr. McDonald seeks compensatory damages pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial, in addition to punitive damages against Defendants Augustus, Wyatt Lucha, and Osaki, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, McDonald respectfully requests this Court to enter judgment awarding him:

1. Compensatory (actual) damages of at least $39,000, in an amount to be proven at trial, against all Defendants;

2. Punitive damages against Defendants Barr, Souza, Barrow, Augustus, Wyatt Lucha, and Osaki;

3. Attorneys' fees and costs;

4. Any such other relief as the Court determines proper.

**JURY DEMAND**

McDonald hereby demands a trial by jury as to all issues triable before a jury.

Dated: December 5, 2014                    KEKER & VAN NEST LLP

                                           By: */s/ Benjamin D. Rothstein*
                                               BENJAMIN D. ROTHSTEIN

                                           Attorneys for Plaintiff DAVID
                                           MCDONALD

17
PLAINTIFF DAVID MCDONALD'S THIRD AMENDED COMPLAINT
Case No. 14-cv-04154 VC

884727